John **KUBINSKY** and Janice
**Kubinsky,** Appellants,

v.

**VAN ZANDT REALTORS** and
**Lynn Neathery,** Appellees.

No. 2–90–143–CV.

Court of Appeals of Texas,
Fort Worth.

June 18, 1991.

Rehearing Overruled Aug. 7, 1991.

G. Craig Hubble, Arlington, for appellants.

Paul F. Wieneskie, Cribbs & McFarland P.C., Arlington, for appellees.

Before WEAVER, C.J., and LATTIMORE and DAY, JJ.

## OPINION

WEAVER, Chief Justice.

This case involves a claim by the purchasers of a house, with a defective foundation, against the listing agent and her broker. In June, 1987, Ralph and Christine Bane (the Sellers) retained Lynn Neathery to list their home. In August of that year, appellants, John and Janice Kubinsky, purchased this house from the Sellers. Two or three weeks after the appellants moved into the house, they noticed cracks above doors, around windows, and in the slab.

As a result, appellants filed suit against the Sellers, the company who inspected the house, and appellees, Lynn Neathery and her broker, Van Zandt Realtors. Based on two affidavits and accompanying summary judgment evidence, the trial court granted appellees' motion for summary judgment and severed the parties and the causes of actions against appellees from the remaining actions against the other defendants. In six points of error, appellants complain that the trial court erred in granting appellees' motion for summary judgment because: 1) appellees owed appellants a legal duty and there is a genuine issue of material fact whether appellees breached that duty; 2) the acts or omissions of others did not relieve appellees of their legal duty to appellants; 3) there is a genuine issue of material fact as to whether appellees' acts or omissions were a proximate cause or a producing cause of appellants' damages; 4) as a matter of law, appellees, licensed realtors, gave appellants an implied warranty that their services would be performed in a good and workmanlike manner; 5) the trial court should have granted appellants a continuance to permit depositions to be taken or discovery to be had, as permitted by rule 166a(f) of the Texas Rules of Civil Procedure; and 6) there was a genuine issue of material fact as to whether appellees had actual knowledge of defects in the house in question. We affirm.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); Tex. R.Civ.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the nonmovant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Insurance Company*, 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Montgomery*, 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American*, 391 S.W.2d at 47.

The record indicates that appellants had retained their own real estate agent, Pam Homer of Henry S. Miller Real Estate Agency, to aid them in the purchase of a new home. The Sellers and appellants executed a contract to purchase the Sellers' house, which permitted the appellants to have the foundation and other components of the home inspected by an inspector of their choice prior to closing the purchase. Appellants did have the house inspected by Meruss Inspection Company, which noted in its inspection report: "Evidence of minor [foundation] movement noted on East side of House. No major movement Noted at this time." Appellant John Kubinsky was present during the inspection and, concerned over the notation that the house showed minor foundation movement, went outside with the inspector to see what the inspector had found. Appellants' agent, Pam Homer, was also present during the inspection, as well as Christine Bane, one of the sellers, but neither appellant nor Homer nor the inspector questioned Christine Bane about the foundation movement or whether any repairs had been performed.

After taking possession of the property, appellants began to notice cracks above doors, around windows, in the exterior brick, in brick mortar, in the slab foundation, and other external signs of foundation problems. Upon further inquiry, appellants discovered that the house had undergone foundation repair work approximately three months before appellants purchased the house.

Both appellees and appellants agree that the main issue on this appeal is whether a listing real estate agent has a legal duty to inspect the listed property for defects over and above asking the sellers if such defects exist.

■ Appellants claim under their first point of error that such a duty does exist in Texas and that appellees breached this duty. Specifically, appellants assert two major points: 1) that appellees had a duty to take reasonable measures to determine whether the property was defective, including inspection of the home for signs of foundation problems and to explain to the Sellers the need to disclose prior foundation problems to a prospective purchaser; and 2) that upon receiving a copy of the inspection report indicating that foundation movement had occurred, appellees should have made sufficient and adequate inquiries of the Sellers concerning the foundation movement. However, appellants concede that they have found no Texas cases supporting their contentions.

In support of their argument, appellants rely primarily upon interpretations of provisions of The Real Estate License Act (TRELA)[1] and upon a case out of the California Court of Appeals, *Easton v. Strassburger*, 152 Cal.App.3d 90, 199 Cal.Rptr. 383 (1984).

Appellants begin their argument by looking to section 15(a)(6)(A) of TRELA which provides that the Texas Real Estate Commission may suspend or revoke a license if a licensing agent makes a "material misrepresentation" or fails "to disclose to a potential purchaser any latent structural defect or any other defect known to the broker or salesman."

Under this point of error, appellants do not contend that appellees had knowledge of the foundation damages, and we do not read this section as imposing a duty to inspect listed properties or to make an affirmative investigation for possible defects.

Further, section 18C of TRELA provides detailed criteria for licensing of real estate inspectors. This section, entitled Real Es-

tate Inspectors; Licensing; Violations; Penalties; Real Estate Inspection Recovery Fund, defines a real estate inspector as a person who holds himself out to the public as "being trained and qualified to inspect improvements to real property, including structural items and/or equipment and systems, and who accepts employment for the purpose of performing such an inspection for a buyer or seller of real property." TEX.REV.CIV.STAT.ANN. art. 6573a, § 18C(a)(1) (Vernon Supp.1991). Subsection (a)(2) of section 18C defines a real estate inspection as a "written or oral opinion as to the condition of improvements to real property, including structural items and/or equipment and systems." Subsection (c) provides: "A person may not act or attempt to act as a real estate inspector in this state for a buyer or seller of real property unless the person possesses a real estate inspector license issued under this section." Subsection (c) further provides that in order to be eligible for a license as a real estate inspector, an applicant must successfully complete at least ninety classroom hours of "core real estate inspection courses" and satisfactorily complete an examination thereon. Under subsection (i)(5), a licensed real estate inspector may not "act in the dual capacity of real estate inspector and real estate broker or salesman." Finally, subsection (j) provides: "A person commits an offense if the person knowingly or intentionally engages in the business of real estate inspecting without a license...." Referring back to the definition of real estate inspection, the business of real estate inspecting under subsection (j) can be defined to be the giving of a written or oral opinion as to the condition of improvements to real property, including structural items.

Appellants next point to section 15(a)(6)(W) of TRELA, which provides that a licensee is subject to suspension or revocation of his license if he has been guilty of "acting negligently or incompetently in performing an act for which a person is required to hold a real estate license." Listing, selling, and offering to sell real estate

---

**1.** Tex.Rev.Civ.Stat.Ann. art. 6573a (Vernon Supp.1991).

are acts for which a real estate broker's or salesman's license is required under section 2(2) of TRELA. However, inspection of real estate for defects is not included in the list of acts contained in section 2(2). Inspection of real estate requires a separate license under section 18C of TRELA, which specifically prohibits blending the functions of broker or salesman and inspector.

In the Canons of Professional Ethics and Conduct for Real Estate Licensees, the Texas Real Estate Commission promulgated a section entitled "Fidelity," and it provides, in part, "that the primary duty of the real estate agent is to represent the interests of his clients, ... however, the agent, in performing his duties to his client, shall treat other parties to a transaction fairly." Tex. Real Estate Comm'n, 22 TEX.ADMIN.CODE § 531.1 (West January 1, 1976) (Fidelity). Appellees' fiduciary duties in this case ran to the Sellers of the home, although appellees were also required to treat appellants fairly in the transaction. That duty is adequately protected by the provisions of section 15(a)(6)(A) requiring disclosure to a potential purchaser of any latent structural defect or other defect known to the broker or salesman. Further, we note that appellants engaged the services of their own real estate agent, Pam Homer of Henry S. Miller Real Estate Agency, who assisted them throughout the transaction and that appellants and their real estate agent engaged the services of Meruss Inspection Company to inspect the property to assure its structural integrity and condition prior to contracting for purchase of the home.

Appellants further point to the California case *Easton v. Strassburger*, which imposed a duty on the listing agent to inspect the listed residential property and to disclose to prospective purchasers all facts materially affecting the value or desirability of the property that such an investigation would reveal. *Easton*, 199 Cal.Rptr. at 389–90, 199 Cal.Rptr. 383. However, in light of our discussion of TRELA, we decline to follow the California Court of Appeals. We believe that the imposition of such liability in this situation should be left

to the Texas Legislature. Appellants' first point of error is overruled.

Under appellants' second and third points of error, they claim that summary judgment was improper because the acts or omissions of others did not relieve appellees of their legal duty to appellants and because there is a genuine issue of material fact as to whether appellees' acts or omissions were a proximate cause of appellants' damages. In light of our holding under appellants' first point of error, we overrule appellants' second and third points of error.

■ Under appellants' fourth point of error, they alleged that appellees, as licensed realtors, gave appellants an implied warranty that their services would be performed in a good and workmanlike manner.

Appellants cite *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex.1987) in support of their argument. In *Melody Home*, the supreme court held that an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner exists under section 17.50(a)(2) of the Deceptive Trade Practices Act (DTPA). TEX.BUS. & COM.CODE ANN. § 17.50(a)(2) (Vernon 1987). However, the court expressly did not decide whether the warranty applied to services in which the essence of the transaction is the exercise of professional judgment by the service provider. *Id.* at 354.

In *Forestpark Enterprises v. Culpepper*, 754 S.W.2d 775 (Tex.App.—Fort Worth 1988, writ denied), this court stated that since the supreme court expressly refused to decide the question of whether an implied warranty applies to services in which the essence of the transaction is the exercise of professional judgment by the service provider, the supreme court's prior opinion in *Dennis v. Allison*, 698 S.W.2d 94, 95–96 (Tex.1985), indicating that no such implied warranty exists, remains as the most recent controlling authority. *Forestpark*, 754 S.W.2d at 779.

In the instant case, there is no dispute that appellees were not seeking to repair or modify existing tangible goods or property. Appellees' services in connection with this

transaction clearly involve the exercise of professional judgment by appellees; thus, no implied warranty of good and workmanlike performance exists as a matter of law. *Id.* Appellants' fourth point of error is overruled.

Under their fifth point of error, appellants claim that the trial court should have granted appellants' motion for continuance to permit further discovery pursuant to rule 166a(f) of the Texas Rules of Civil Procedure. We note the provision appellants are referring to is now contained in rule 166a(g). TEX.R.CIV.P. 166a(g).

Appellees attached to their motion for summary judgment Lynn Neathery's affidavit which stated that neither the Sellers nor anyone else informed her that there were any foundation problems with the house or that any repair work had been done on the foundation. In addition, the appellees submitted Christine Bane's deposition testimony which stated that she did not tell Lynn Neathery about prior foundation problems or repairs. Mrs. Bane also testified that she and her husband had discussed the issue of foundation problems and repairs prior to meeting with Lynn Neathery and decided not to disclose the foundation's prior problems or its repair to Neathery since, in their opinion, the repairs had cured any possible defects.

In response to these contentions, appellants filed a responsive affidavit of their attorney asking the trial court to deny the motion for summary judgment at that time or to order a continuance of the hearing on the motion for summary judgment so that appellants could take further depositions or other discovery. The affidavit of appellants' counsel noted that he had only recently become the attorney of record for the appellants, that he had not been able to initiate any discovery until January 2, 1990, and that he had not received the motion for summary judgment until the first week of January, 1990, which indicated that the hearing was set for February 2, 1990.

■ A request for a continuance pursuant to rule 166a(g) is a matter well within the trial court's discretion, and the trial court's ruling will not be disturbed on ap-

peal unless an abuse of discretion is shown. *Manges v. Astra Bar, Inc.*, 596 S.W.2d 605, 612 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Rule 166a(g) provides that the trial court may allow further discovery or order a continuance if it appears from the affidavit of the party opposing summary judgment that such action is necessary or the trial court *"may make such other order as is just."* TEX.R.CIV.P. 166a(g) (emphasis added).

■ This lawsuit was originally filed on November 14, 1988, by appellants' prior counsel. Although appellants' first motion for a continuance of the hearing on appellees' motion for summary judgment was denied, the order denying that continuance granted appellants leave to file their written response to the motion for summary judgment, amended pleadings, affidavits, and other documentation responding to said motion for summary judgment any time prior to the hearing, which remained set for February 2, 1990, at 9:30 A.M. Appellants thus were granted an additional seven days prior to the hearing within which to conduct discovery, since the court's order effectively waived the requirement in rule 166a(c) that the adverse party must file its response no later than seven days prior to the day of the hearing. The trial court then granted appellants a second continuance, by entering an order permitting any party to file additional summary judgment documentation on or before February 12, 1990, ten days after the hearing on the motion for summary judgment. To further accommodate appellants, the trial court entered an order that appellees would be required to respond to any interrogatories or any other discovery request propounded by appellants to appellees within twenty-four hours following service of same upon appellees' attorney.

In addition, appellants have not alleged that they were unable to obtain the deposition they sought within these additional time periods. Based on the above, we decline to hold that the trial court abused its discretion in denying appellants' request for a continuance. Appellants' fifth point of error is overruled.

Under their sixth point of error, appellants allege that there was summary judgment evidence to create a fact issue of whether appellee Neathery had knowledge of the house's foundation problems or repairs for DTPA purposes. As stated above, appellees attached Lynn Neathery's affidavit and Christine Bane's deposition testimony asserting that Neathery had no knowledge of the foundation problems or repairs.

Appellants point to two alleged pieces of summary judgment evidence which they claim indicate the existence of circumstances tending to cast suspicion upon appellee Neathery's affidavit.

First, appellants mention a proposal issued by a foundation repair company to work on the foundation of the house. Appellants' contention is unclear. They state that the proposal was accepted, but do not mention by whom. Appellants then state that appellee Neathery met with a representative of Ross–McClain, a company which appellants allege offered to take the home on a trade, if the home did not sell within a certain period of time. We have reviewed the record and those portions of the record cited by appellants, and we cannot find any summary judgment evidence supporting appellants' claim that appellee Neathery had access to or examined any proposal.

Next appellants claim that appellee Neathery received an appraisal report of the property notating that "[t]here were exterior brick and mortar cracks as well as interior sheetrock cracks."

However, appellee Neathery testified that she merely received a drawing or a diagram, not an entire appraisal report. There is no appraisal report contained in any of the exhibits to Neathery's deposition. Only the diagram appears as a separate document which was contained in Neathery's files.

Based on the summary judgment evidence, we hold that the trial court did not err in granting appellees' motion for summary judgment. *See Pfeiffer v. Ebby Halliday Real Estate*, 747 S.W.2d 887, 890 (Tex.App.—Dallas 1988, no writ) (listing agent's knowledge that house's foundation had been repaired, that soil conditions in the area often created foundation damage, that house's foundation problems were common knowledge among real estate agents in the area, and that owner of house was a friend of the listing agent were insufficient to support jury's finding that listing agent had knowledge of house's foundation problems). Appellants' sixth point of error is overruled.

The trial court's judgment is affirmed.